IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **United States of America, et al.** }<br>           Plaintiffs }<br>  vs. }<br> }<br>**Aseracare, Inc, et al.** }<br>           Defendants } | | **Case 2:12-cv-0245-KOB**<br>**(LEAD)** |
| **United States of America, et al.** }<br>           Plaintiffs }<br>  vs. }<br> }<br>**GGNSC Holdings, LLC, et al.** }<br>           Defendants } | | **Case 2:12-cv-2264-KOB**<br>**(CONSOLIDATED)** |
| **Dawn Richardson, et al.** }<br>           Plaintiffs }<br>  vs. }<br> }<br>**Golden Gate National Senior Care, LLC,** }<br> **et al.** }<br>           Defendants } | | **Case #2:09-cv-0627-KOB**<br>**(CONSOLIDATED)** |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on the United States of America's "Motion to Partially Intervene for Good Cause" in *U.S. v. GGNSC Holdings, LLC* ("*Micca*"). (Doc. 39). The Government argues that the court should allow intervention "for good cause" under the False Claims Act because of the discovery of new evidence after the initial intervention deadline. *See* 31 U.S.C. 3730(c)(3). The Defendants argue that the Relator's claims are barred by the "First to File Rule" and that the court does not have subject matter jurisdiction over the case to grant the

1

Government's motion to intervene. The Defendants also argue that even if the court does have subject matter jurisdiction over the case, the Government has not shown sufficient good cause to warrant intervention. For the following reasons, the court GRANTS the Government's Motion to Intervene. (Doc. 39).

I.      Subject Matter Jurisdiction

The Defendants argue that (1) the first-to-file rule is a jurisdictional bar to the continuing of this action; (2) jurisdiction is a prerequisite to considering a motion to intervene; (3) the Relator's claims are jurisdictionally barred by the first-to-file rule because *U.S. v. Aseracare, Inc.* ("*Paradies*") is based on the same facts as this action; (4) the Government's intervention does not create jurisdiction; and thus (5) the court does not have subject matter jurisdiction over any of the claims and should deny the Government's motion to intervene and dismiss the case. The court will address each of these propositions in turn.

The first to file rule is a jurisdictional bar even though the statute itself does not make it explicit. *U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 258 (E.D. La. 2011) ; *see* 31 U.S.C. 3730(b)(5) ("When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.").

While courts have consistently recognized that jurisdiction is a prerequisite to considering intervention,  the cases cited by the Defendants are not False Claims Act cases and do not discuss the Government's motion to intervene in a *qui tam* action, which is an exceptional circumstance. Even though a *relator's* claims may be barred by the first-to-file rule, the government's intervention in a *qui tam* action "may change the claims that are currently asserted." *United*

*States ex rel. Roberts v. Sunrise Senior Living,* 2009 WL 499764, at *2 (D. Ariz. 2009). In *Sunrise Senior Living*, the court deferred ruling on whether it had subject matter jurisdiction on the relators' claims when it granted the government's motion to intervene:

> [I]t would not be prudent to base such an assessment on a complaint that may ultimately prove irrelevant to this litigation. Only after the government has decided which claims it will purse (and the Relators have framed their own claims if any in light of the government's complaint) will it make sense for this Court to evaluate whether the Relators are original sources for any of the newly-framed claims. It may well be that many of the same issues are present; however, this Court declines to decide this question when the government's complaint is not yet before it.

*Id.* This court agrees with the court's reasoning in *Sunrise Living* and will defer ruling on the matter of subject matter jurisdiction until after the Government has intervened.

Additionally, the Government can intervene in a suit regardless of the jurisdictional defects in the underlying suit, including a relator's suit barred by the first-to-file rule. "In *Federal Recovery Services*, the court held that the 'United States may properly intervene in a suit by a putative source regardless of jurisdictional failures in the underlying suit.' *Federal Recovery Services, Inc. v. U.S.,* 72 F.3d 447, 452 (5th Cir. 1995). Thus, even if [the court] were to find subject matter jurisdiction lacking over the *qui tam* claims of the Relator, that would *not* require [the court] to dismiss the Government's claims as well.*" U.S. ex rel. Cosens v. Yale New-Haven Hosp.*, 233 F. Supp. 2d. 319, 326 (D. Conn. 2002) (internal citations omitted) (emphasis added). This court can allow Government intervention despite whatever, if any, jurisdictional defects exist in the Relator's claims, including the first to file jurisdictional bar the Defendants assert applies in this case.

Thus, even if the court does not have subject matter jurisdiction over the *Relator's*

3

claims, Government intervention is appropriate at this point if the Government has shown "good cause" for its intervention.

    II.    <u>"Good Cause"</u>

As will come as no surprise to the parties to this action, the court finds "good cause" for the Government's intervention for the same reasons it found "good cause" in the *Paradies* action, but those reasons bear repeating.

Under the False Claims Act, when the government declines to intervene in a *qui tam* case initially, it may intervene at a later time upon a showing of good cause under 31 U.S.C. § 3730(c)(3). The Act does not define "good cause," but courts have found good cause in cases where the government realized the magnitude of the alleged fraud was much larger than it had originally anticipated; where the government received additional and new evidence about the case; and where intervention would protect the interests of the relators. *See U.S. ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D. N.Y. 1995) (granting government intervention when the government had "uncovered information suggesting that the scope of the alleged fraud [was] more extensive than originally anticipated"); *U.S. ex rel. Stone v. Rockwell Intern. Corp.*, 950 F. Supp. 1046, 1049 (D. Colo. 1996) ("Even if good cause requires a showing of new evidence, the government has sustained that burden"); *Id.* ("Such reading leads us to the conclusion that the 'good cause' requirement of § 3730(c)(3) was intended to protect the interests of the relator." (quoting 29 U.S.C. § 3730(c)(3))).

In addition, the legislative history of the False Claims Act suggests that Congress intended for the government to be able to intervene upon the discovery of new information. *See* S. Rep. No. 99-345, at 26 to 27 (1986) (discussing that the discovery of new evidence "could

escalate the magnitude or complexity of the fraud, causing the Government to reevaluate its initial assessment or [make] it difficult for the *qui tam* relator to litigate alone").

The Government argues that the Corridor Reports show that the Defendants knowingly submitted false claims to Medicare for hospice care; when the Government received the Reports, they provided new evidence of fraud sufficient to show good cause for intervention under the FCA.  The Defendants argue that the Corridor Reports do not provide the new evidence necessary to allow intervention for good cause because the Government already had evidence of the alleged fraud contained in the Corridor Reports when they received the Reports.

The Government discussed the importance of the Corridor Reports in its Reply brief:

> The Corridor Reports are evidence that AseraCare knowingly submitted false claims to Medicare for hospice care. Without unnecessarily delving into a discussion of the merits of the case, the United States believes that the Corridor Reports put AseraCare on notice as early as 2004 of the very conduct alleged in the complaint.
> In its reviews, Corridor assessed the capacity of the organization and staff to support compliance with the Medicare requirements and provided recommendations to improve compliance.  The Corridor Reports informed AseraCare not only that documentation did not support eligibility in significant percentages of the medical records of patients reviewed, but also that AseraCare did not have an infrastructure that supported compliance and needed to, among other things, educate its staff on the eligibility criteria and involve the medical directors (physicians) in the eligibility determination. The 2007-2008 Corridor Report found continued problems with staff's knowledge of the eligibility criteria.
> The Corridor Reports are evidence of scienter, as the FCA imposes liability on those who ignore obvious warning signs.

(Doc. 63, at 8-9) (footnotes and internal citations omitted).

The Corridor Reports were also the Government's basis for its Motion to Intervene in *Paradies*, which the court granted and then affirmed on September 24, 2012. The Government claims that the Reports were crucial to its investigation leading up to its decision to intervene in

5

all three cases, now consolidated in this court. The court finds the Corridor Reports sufficient to support a showing of good cause for Government intervention in this case.

The Defendants also argue that the Government's intervention in this case would create unnecessary confusion. Due to the recent consolidation of *Paradies*, *Richardson*, and this action, the Defendants' concerns about confusion and delay are moot; the court will address the Defendants' concerns by consolidating the scheduling of all three cases at a later date.

DONE and ORDERED this 24th day of October, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE